COLUMBIA GAS OF PENNSYLVANIA,
INC., and the Manufacturers Light
and Heat Company

v.

UNITED STATES of America.

No. 19225.

United States Court of Appeals,
Third Circuit.

Argued June 1, 1971.

Decided July 8, 1971.

William L. Goldman, Asst. Atty. Gen. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Attys., Tax Div., Dept. of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., on the brief), for appellant.

Edmund S. Ruffin, III, Thorp, Reed & Armstrong, Pittsburgh, Pa. (Henry A. Morrow, Jr., Peter G. Veeder, David M. Laufe, Pittsburgh, Pa., on the brief), for appellees.

Before McLAUGHLIN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The United States appeals from a judgment in a civil action in favor of taxpayers who sued for a refund of documentary tax stamp taxes paid by them in January of 1962. Taxpayers made a timely claim for refund, which was disallowed, and then filed a timely refund suit. In the district court the parties entered into a stipulation of facts which included relevant exhibits. The district court entered judgment in favor of the plaintiff Columbia Gas of Pennsylvania, Inc. (hereinafter Pennsylvania) in the amount of $36,188.80 plus interest, and in favor of The Manufacturers Light and Heat Company (Manufacturers) in the amount of $17,073.30 plus interest, these sums being

the amount of documentary stamp taxes in issue. The case involves the application of the exemption from payment of documentary tax stamp taxes enacted in the Excise Tax Technical Changes Act of 1958, Pub.L. 85–859, 72 Stat. 1274, set forth in 26 U.S.C. § 4382(b)–(1) (D). For excise tax purposes the decision will have no significant precedential effect, since the documentary stamp tax statutes have since been repealed. Act of June 21, 1965, Pub.L. 89–44, Title IV, § 401 (a), 79 Stat. 148.

Manufacturers is a Pennsylvania corporation, and a wholly owned subsidiary of Columbia Gas System, Inc., a Delaware corporation (hereinafter Columbia). Columbia is a public utility holding company registered under the Public Utility Holding Company Act. Its business is that of owning stock in public utilities, and loaning money to such utilities, engaged in the production, transmission and distribution of natural gas. Prior to January 1, 1962, Columbia owned stock in a number of subsidiaries which were engaged in combined transmission and sale of natural gas in interstate commerce, and in intrastate retail distribution and sale of natural gas wholly within several states. As a result of such combined activities these subsidiaries were subject to the regulation of multiple regulatory agencies. Manufacturers, one such subsidiary, was simultaneously subject to the regulation of the Federal Power Commission in its wholesale business and of the Public Service Commissions of West Virginia, Ohio, Maryland and Pennsylvania in its retail business. To avoid overlapping regulations of its various subsidiaries, Columbia formulated an overall plan of corporate simplification which would place the business of wholesale transmission and sale of natural gas into a subsidiary subject only to Federal Power Commission regulation and the retail distribution and sale into separate subsidiaries in the several states each subject to regulation by one state regulatory agency only. To that end Columbia caused the formation of Pennsylvania, and as of January 1, 1962 caused Manufacturers to transfer to Pennsylvania those assets of Manufacturers in the Commonwealth of Pennsylvania which up to then had been used by Manufacturers in the intrastate distribution and sale of natural gas at retail in that Commonwealth. In exchange for the intrastate retail assets of Manufacturers Pennsylvania issued to Manufacturers Pennsylvania's $25 par value common stock, together with Pennsylvania's notes and debentures in various face amounts, interest rates and maturity dates. These securities of Pennsylvania were identical in equity, interest rates and maturity dates to securities which Manufacturers had previously issued to Columbia, and which at the time of issue represented the underlying assets and properties used by Manufacturers in its intrastate retail business in the Commonwealth of Pennsylvania. The Pennsylvania stock, notes and debentures were immediately transferred by Manufacturers to Columbia in exchange for identical equities and debt securities owned by Columbia. When Manufacturers received from Columbia its stock, notes and debentures, these were immediately cancelled. Prior to the transaction, Columbia owned 100 percent of the capital stock of both Manufacturers and Pennsylvania. The combined capital stock of Manufacturers and Pennsylvania held by Columbia after the transaction equalled the value of capital stock of Manufacturers held by Columbia before the transaction.

The transaction was approved by the Securities and Exchange Commission, the Federal Power Commission and the Public Service Commissions of West Virginia and Pennsylvania. The United States Treasury Department, Internal Revenue Service, ruled that the transaction was a tax free reorganization within the meaning of Section 368(a) (1) (D) of the Internal Revenue Code of 1954. Thus no gain or loss was realized in the transaction by Columbia, Manufacturers or Pennsylvania, and the basis, for income tax purposes, of the assets

acquired by Pennsylvania in the transaction was the same as the adjusted basis of such assets in the hands of Manufacturers prior to the transaction. Columbia files consolidated tax returns with its subsidiaries.

In connection with the issuance of its stock to Manufacturers, Pennsylvania purchased and affixed to its stock transfer book documentary stamps in the amount of $36,188 representing one-tenth of one percent of the par value of the stock so issued. In connection with the transfer of Pennsylvania stock from Manufacturers to Columbia, Manufacturers purchased and affixed to Pennsylvania's stock transfer book documentary stamps in the amount of $14,-475.20, representing 4 cents per $100, or fractional part thereof of the par value of Pennsylvania stock so transferred. Manufacturers also purchased and affixed to the deeds transferring certain real estate to Pennsylvania documentary stamps in the amount of $2,598.10 representing 55 cents per $500, or fractional part thereof, of the value of the real estate conveyed.

Pennsylvania and Manufacturers claim that the cost of the documentary stamps should be refunded because of the provisions of section 4382(b) (1) (D) of the Internal Revenue Code of 1954, as amended by the Excise Tax Technical Changes Act of 1958, which provides:

> "The taxes imposed by sections 4301 [original stock issue], 4311 [issuance of certificates of indebtedness], 4321 [stock transfer], 4331 [transfer of certificates of indebtedness], and 4361 [conveyances of real estate] shall not apply to—
>
> (1) The issuance, transfer, or exchange of securities, or the making, delivery, or filing of conveyances, to make effective any plan of reorganization or adjustment—
>
> (D) *Whereby a mere change in identity, form, or place of organization is effected,* * * *." (emphasis added).

The Internal Revenue Service contends that the quoted exemption is inapplicable to a divisive reorganization; that is, a reorganization in which, without any change in ownership interest a single wholly owned subsidiary corporation is split into two or more wholly owned subsidiaries. The district court rejected this contention, holding that the transaction fell within the terms of § 4382 (b) (1) (D), as a reorganization involving "a mere change in identity, form or place of organization." That holding is at variance with a case involving the same public utility holding company and its Maryland subsidiary. Columbia Gas of Maryland, Inc. v. United States, 366 F.2d 991, 177 Ct.Cl. 97 (1966). The Court of Claims, two judges dissenting, held that § 4382(b) (1) (D) does not apply to a divisive reorganization, even one involving no change in ownership. It assumed from the language of the statute and its rather scanty legislative history that Congress intended the exemption from documentary stamps to be coextensive with Section 368(a) (1) (F) of the 1954 Internal Revenue Code. That subsection sets forth the definition of one of the five classes of corporate reorganizations recognized for income tax purposes. The Internal Revenue Service contends that the Manufacturers—Pennsylvania—Columbia transaction qualifies as a reorganization under § 368(a) (1) (D), but not under § 368(a) (1) (F). Since the exemption from documentary stamp taxes in § 4382(b) (1) (D) is couched in language substantially identical with that of § 368 (a) (1) (F), it urges that the exemption is inapplicable unless the reorganization qualifies as an "F" reorganization.

Both the appellant and the appellees rely upon the legislative history of § 4382(b) (1) (D). That history is contained in the Senate report on the Excise Tax Technical Changes Act of 1958. S. Rep. No. 2090, 85th Cong., 2d Sess., 1958 U. S. Code Cong. & Adm. News, p. 4395 (1958). That Act originated as H.R. 7125 and covered a broad range of excise

taxes. The Senate modified a number of provisions of the House bill, including those provisions dealing with exemption from documentary stamps. The exemptions set forth in § 4382(b) (1) (A), (B) and (C) were already in the Internal Revenue Code of 1954, and indeed in the Internal Revenue Code of 1939. These exemptions include corporate and railroad reorganizations under the Bankruptcy Act. The exemptions under subsections (A), (B) and (C) of § 4382(b) (1) appear to be applicable whether or not such court approved reorganizations qualify under the income tax provisions of the code for reorganization treatment. To this existing group of exemptions the 1958 Act added subsection (D) here in issue. Referring to that subsection the Senate report says:

> "Your committee has amended the proposed code section 4382 provided by the House bill to add a new exemption in the case of corporate reorganizations where the change is a mere change in identity, form, or place of organization, however effected. Such corporate reorganizations, along with certain other types of reorganizations, presently are free of income tax. Reorganizations involving a mere change in identity, form, or place of organization, represent merely a formalistic change and do not involve any shifts in ownership. For that reason, your committee has excluded such reorganizations from the issuance and transfer taxes on stocks and certificates of indebtedness as well as from the tax on the conveyance of real property." S.Rep. No. 2090, *supra* at 61, 1958 U.S.Code Cong. & Adm. News at p. 4454.

Appellants read the quoted language as evidencing an intent to cross-reference to § 368(a) (1) and to select for exemption only those reorganizations listed in that section which fall under § 368(a) (1) (F). Appellees, relying on the language " * * * represent merely a formalistic change and do not involve any shifts in ownership," argue that the principal congressional concern was to exempt formalistic changes not involving a change in ownership.

Several points stand out. First, the 1958 legislation did not deal with income taxes. The lengthy bill dealt solely with excise taxes. Secondly, we are hardly compelled to read into the single quoted paragraph in a report over two hundred pages in length dealing entirely with excise taxes, an intention to cross-reference or adopt by reference an income tax reorganization section. Thirdly, the other exemptions in § 4382(b) (1) to which subsection (D) was added, are entirely independent of § 368(a) (1). At best the scanty legislative history is neutral on what Congress intended by use of the language "mere change in identity, form, or place of organization."

Support for appellees' reading of the language may be found in Cabot Corp. v. United States, 220 F.Supp. 261 (D. Mass. 1963), aff'd per curiam, 326 F.2d 753 (1st Cir. 1964), the only other case interpreting the statute. In that case Judge Wyzanski considered a merger which, the Internal Revenue Service had ruled, qualified as a reorganization under both § 368(a) (1) (A) and § 368(a) (1) (F). He held that the transaction was not exempt from documentary stamps, even though it qualified as an "F" reorganization, and even though there was no dedication of new capital, because the merger, which resulted in the elimination of some shareholders, made a change in ownership of the proprietary interest in the corporation.

Appellant would accept the *Cabot* holding so long as we added a caveat. It would have us hold that the exemption is applicable only if there is both an "F" type reorganization and an identity of ownership interest before and after the transaction. Conceding that the reorganization here conforms to the identity of ownership requirement of *Cabot*, it urges that no divisive reorganization can ever qualify as an "F" reorganization. The position of the Internal Revenue Service on whether a divisive reorganization can fall within § 368(a) (1) (F) has not always been

consistent with that taken here. See Stephens, Inc. v. United States, 321 F. Supp. 1159 (E.D.Ark. 1970); cf. Gordon v. Commissioner of Internal Revenue, 424 F.2d 378, 384 (2nd Cir.), cert. denied, 400 U.S. 848, 91 S.Ct. 63, 27 L.Ed.2d 86 (1970). Moreover it is clear that a shift in ownership may not be a bar to income tax treatment under § 368(a) (1) (F). Reef Corp. v. Commissioner of Internal Revenue, 368 F.2d 125 (5th Cir. 1966) cert. denied 386 U.S. 1018, 87 S.Ct. 1371, 18 L.Ed.2d 454 (1967). The full meaning of the "F" reorganization in income tax law is a currently debated issue. See, e. g., Pugh, The F Reorganization: Reveille for a Sleeping Giant?, 24 Tax L. Rev. 437 (1969). Appellant would have us reach that income tax issue in this excise tax case.

■■■ We do not find it necessary to do so. We hold that in using the language "a mere change in identity, form, or place of organization" in § 4382(b) (1) (D) Congress intended to exempt a generic class of formalistic transactions involving no change in ownership and no new dedication of capital. It did not intend to import into the excise tax field a specific definition of whatever type of reorganization is covered by § 368(a) (1) (F). We agree with the district court that the simple divisive reorganization here in issue, involving no shift in ownership interests, qualifies as an exempt transaction. We express no opinion whatsoever as to whether such a reorganization would qualify, for income tax purposes, as both a "D" and an "F" reorganization.

One other of appellant's arguments is worthy of note. It argues that the test for the exemption should not be shift in ownership because in the Excise Tax Technical Changes Act of 1958 the tax remained due under 26 U.S.C. § 4302, dealing with documentary stamp taxes in recapitalizations which also involve no shift in ownership. Recapitalizations were given separate treatment in § 4302 in order to bring within the reach of the documentary stamp excise tax dedications of capital not theretofore taxed. If the exemption in § 4382(b) (1) (D) does not apply to such recapitalizations, the recapitalization excise tax has no bearing upon the class of reorganizations exempted. In fact, however, the language of § 4302 makes it clear that this section merely defines the measure of the tax due under § 4301 in certain cases. It is not a tax on recapitalizations. It is a tax on stock issued in recapitalizations. If the transaction is exempt from tax under § 4301, § 4302 apparently never comes into operation.[1]

The judgment of the district court will be affirmed.

---

1. In the transaction Pennsylvania issued 1,447,518 shares of $25 par value common stock, thereby establishing a capital stock account of $36,187,950. Manufacturers redeemed 537,279 shares of its $50 par value common stock, thereby reducing its capital stock account by $26,863,950. To account for the difference, Manufacturers reduced its paid-in capital surplus by $9,324,000. Documentary stamp taxes had, of course, been paid when Manufacturers first issued the stock which it redeemed in the transaction. Neither the time when Manufacturers issued its stock to Columbia nor the amount of documentary stamp tax paid at that time appear in the record. Probably the original Manufacturers issue took place prior to 1958 and the tax was measured by par value. After 1958 the tax on original issues of par value stock was measured by the actual value of the shares. We do not here reach the proper measure of the tax in a non-exempt transaction. The appellant did not contend in the district court or before this court that an excise tax was due either from Manufacturers or from Pennsylvania, measured by the reduction of Manufacturers paid in capital surplus.